[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11640
Non-Argument Calendar

_____

D.C. Docket No. 8:10-cr-00148-VMC-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON ALLEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 24, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Brandon Allen appeals the sentence imposed following his conviction for

possession with intent to distribute five grams or more of crack cocaine and less than fifty grams of marijuana, in violation of 21 U.S.C. § 841, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e). After a thorough review of the record, we affirm.

## I.

Allen was indicted for numerous drug offenses and a firearm offense. He pleaded guilty to possession with intent to distribute crack cocaine and marijuana (Count 5) and possession of a firearm by a convicted felon (Count 7). Based on the amount of crack involved, Allen faced a mandatory minimum sentence of five years' imprisonment on Count 5. On Count 7, Allen faced a mandatory minimum sentence of fifteen years' imprisonment.

Prior to sentencing, the probation officer prepared a presentence investigation report (PSI), calculating Allen's guideline range based on an adjusted offense level of 34 under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, because Allen had three prior felony drug convictions that were committed on different occasions from one another.[1] The

---

[1] The PSI identified Allen as both a career criminal under § 4B1.1 and an armed career criminal under the ACCA, § 4B1.4. Allen does not challenge his career-offender status. Thus, he has abandoned any argument with respect to that issue. *United States v. Smith*, 416 F.3d 1350, 1354 (11th Cir. 2005).

2

probation officer identified the predicate offenses as cocaine sales on February 4 and February 7, 2005, and possession with intent to distribute cocaine in 2008.[2] Allen's criminal history category was VI whether based on Allen's criminal history points or the category assigned under the ACCA. With a total offense level of 31 after a reduction for acceptance of responsibility, the applicable guideline range was 188 to 235 months' imprisonment. Allen objected to the application of the ACCA, arguing that the two 2005 drug sales were sentenced on the same day and there was no evidence that the two crimes were committed on different occasions. Thus, he argued, they should count only as a single offense for purposes of the ACCA.

At sentencing, the government submitted the charging documents for the two 2005 offenses. The district court noted that, although the cocaine sales were two counts in the same indictment and were sentenced on the same day, the crimes occurred three days apart. Accordingly, the court concluded that the two sales were distinct offenses under the ACCA.

Allen then argued that he should be sentenced under the newly-enacted Fair

---

[2]    Allen does not dispute that the 2008 conviction qualifies as a predicate offense.

Sentencing Act (FSA),[3] which would have removed the five-year mandatory minimum sentence he faced for Count 5 and lowered the base offense level and corresponding guideline range he faced.  The court declined to apply the FSA and sentenced Allen to 188 months' imprisonment.

On appeal, Allen raises two issues: First, he argues that he did not qualify as an armed career criminal because he did not have three prior convictions for drug offenses.  Second, he argues that the court should have sentenced him under the FSA.  We address each in turn.

## II.

Allen argues that his two drug sales on February 4 and 7, 2005, do not qualify as separate predicate offenses under the ACCA because the two sales were one single criminal episode.  He notes that both sales occurred at the same location, within a short time period, and involved the same drug.  He further asserts that the two sales presumably involved the same confidential buyer or at least the same investigating officer.

Under the ACCA, an individual convicted under § 922(g) is subject to a mandatory minimum fifteen-year sentence if he has three previous convictions for

---

[3] Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (effective Aug. 3, 2010).

a violent felony or serious drug offense "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). We review *de novo* whether crimes were committed on different occasions within the meaning of the ACCA. *United States v. Canty*, 570 F.3d 1251, 1254-55 (11th Cir. 2009). The government bears the burden of proving that each previous conviction "arose out of a separate and distinct criminal episode." *United States v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (citation and internal quotation marks omitted).

Under § 924(e)'s different-occasions inquiry, a sentencing court must determine whether "the perpetrator had a meaningful opportunity to desist his activity before committing the second offense." *United States v. Pope*, 132 F.3d 684, 690, 692 (11th Cir. 1998). Although the predicate offenses must be distinct, even a small difference in time or place distinguishes convictions for purposes of the ACCA. *See Sneed*, 600 F.3d at 1330; *accord Pope*, 132 F.3d at 690 ("Mere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode."). "[T]he 'successful' completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first." *Pope*, 132 F.3d at 692. "If some temporal break happens between two offenses," the offenses are considered distinct. *United States v. Proch*, 637 F.3d 1262, 1265 (11th Cir. 2011). "It does not matter for § 924(e)

5

purposes that the legal consequences of a defendant's separate criminal acts were imposed upon him on the same day." *United States v. Wilks*, 464 F.3d 1240, 1244 (11th Cir. 2006). The district court is limited in the documents it may review to determine if the ACCA applies. *See, e.g. Shepard v. United States*, 544 U.S. 13, 23-26 (2005). The court may consider "the terms of the charging document, the terms of the plea agreement or transcript of the colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Id.* at 26.

We conclude that the district court properly determined that the two sales that formed Allen's 2005 convictions were committed on different occasions. The charging document showed that the drug sales occurred on two different dates. Although the government did not present evidence as to what occurred between the February 4 and February 7 drug sales, the three-day break shows that Allen "had a meaningful opportunity to desist his activity before committing the [second] offense." *See Pope*, 132 F.3d at 690. Moreover, the temporal break is enough for the offenses to be considered distinct under the ACCA. *See Proch*, 637 F.3d at 1265.

III.

Allen next argues that the district court erroneously declined to apply the FSA retroactively to his offenses.  He contends that the FSA would have rendered the mandatory minimum sentence on Count 5 inapplicable and lowered his overall guideline range.

We review *de novo* the district court's authority to impose a sentence below the statutory minimum.  *United States v. Gomes*, 621 F.3d 1343, 1345 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1833 (2011).  If the district court erroneously concluded that it lacked authority to impose such a sentence, we will vacate and remand for resentencing unless the party defending the sentence persuades us that the district court would have imposed the same sentence absent the erroneous decision.  *Williams v. United States*, 503 U.S. 193, 203 (1992).

The FSA, which was signed into law on August 3, 2010, adjusted the amount of drugs applicable to base offense levels for crack offenses and increased the amount of crack required to trigger certain mandatory minimums.  *Gomes*, 621 F.3d at 1346.  There is no dispute that, under the Act, the amount of drugs for which Allen was responsible would no longer trigger the five-year mandatory minimum sentence he faced on Count 5.  *Id.*  There also can be no dispute that Allen should have been sentenced under the FSA.  *See Dorsey v. United States*, 567 U.S. __, 132 S.Ct. 2321, 2335 (2012).

7

Nevertheless, we conclude that the court's error is harmless. Although the FSA would have lowered Allen's offense level and guideline range if he had been sentenced based on the amount of drugs involved, it does not impact his sentence under the ACCA. Allen's offense level in this case was 34 under the ACCA because he possessed a firearm in connection with his drug crime. *See* U.S.S.G. § 4B1.4(b). Thus, even if the court applied the FSA, there would be no change in Allen's offense level. Additionally, Allen's criminal history category remains at VI under the ACCA, *see* U.S.S.G. § 4B1.4(c), and based on the number of points he amassed. Accordingly, because the FSA does not affect Allen's offense level or guideline range, the error was harmless.[4] *See Williams*, 503 U.S. at 203.

**AFFIRMED.**

---

[4] We note that Allen would no longer be subject to the five-year mandatory minimum sentence on Count 5 under the FSA. But, he still faced a fifteen-year mandatory minimum sentence on Count 7. The sentence imposed exceeds the five-year mandatory minimum. Thus, there is no need to remand Allen's case.

8